UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DORSEY GARRETT,
    *Plaintiff*,

v.

CROWN EQUIPMENT CORPORATION,
    *Defendant*.

No. 3:15-cv-00942 (JAM)

**RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

One evening while working at a warehouse distribution center, plaintiff Dorsey Garrett was injured after his foot slipped from the platform of a pallet truck that was manufactured by defendant Crown Equipment Corporation. Plaintiff has now brought this products liability claim against defendant, alleging that the truck was defectively designed.

Plaintiff's claim depends on expert testimony about two alleged defects of the truck. Defendant has moved to preclude the expert's testimony and also for summary judgment. Even assuming the defects existed that plaintiff claims, I conclude that the record does not show a genuine issue of fact that any of these claimed defects caused plaintiff's injuries. Accordingly, I will grant defendant's motion for summary judgment and will otherwise deny defendant's motion to exclude the expert's testimony as moot.

### BACKGROUND

Plaintiff was hired in June 2013 at Bozzuto's, Inc., a wholesale distributor in Connecticut. Doc. #39-2 at 15. After a few days of orientation and safety training, he began work as a goods "selector." *Id*. at 16-20. This work required him to use a pallet truck that was manufactured by defendant to move around the freezer area of the Bozzuto's warehouse, picking

1

up loads of items and moving them to the warehouse bay doors, where they could be transferred to trucks for distribution. *Id.* at 23-28.

The model of pallet truck operated by plaintiff was a Crown Equipment Corporation PE 3540-80. The key features of this truck are shown in the diagram below:



The truck has a pair of forks that extend to carry a pallet load. On the opposite side of the truck from these forks is a platform on which the truck's operator may stand. Facing that platform is the "control handle," which is used to operate the truck and to apply power by means of a hand-controlled throttle, which can be rotated in either direction to propel the truck forward or backward. The "control arm" in turn connects the control handle to the body of the truck.

Next to the base of the control arm on the body of the truck is a "coast selector" switch. This is a manually activated switch for a "coasting" feature that allows the truck to coast or glide along without further application of power by the operator at the control handle. If the "coast

selector" switch is not activated, then the truck will not glide or coast once an operator stops applying power.

Also on the main body of the truck, to the left of the control arm, is the "key switch," which is an ignition switch that uses a key in order to turn the truck "on" or "off" for operation. The truck is battery powered, and it has a "power disconnect" handle on the main body of the truck to the right of the control arm that can be used to cut the power to the battery. If the truck has been turned on at the key ignition switch, then its power can still be controlled by means of either plugging in or pulling out the power disconnect handle.

On June 20, 2013, approximately two weeks into his employment at Bozzuto's, plaintiff had an accident that gave rise to the present litigation. Plaintiff parked his pallet truck outside the break room in the warehouse. After taking a break, plaintiff returned to the truck, and he reconnected the truck's battery using the "power disconnect" handle. According to plaintiff, the truck was already turned on, because the key had been snapped off while in the "on" position in the ignition switch. As plaintiff then attempted to mount the platform, his left foot slipped off, and he started to fall. To catch himself he grabbed the control handle and pulled at it in such a way that the truck suddenly moved toward him and hit into his right leg, crushing it against the wall.

Plaintiff's expert, Paul L. Dreyer, submitted a report alleging two defects in the design of the truck. The first alleged defect was that the key in the truck could be removed from the ignition switch while the ignition was still in the "on" position. Supposedly, this defect caused plaintiff's accident, because it resulted in the truck already being turned on before plaintiff could safely mount the operator's platform.

The second alleged defect was that the "coast activator" switch was designed and located in a way that made it too easy to activate by accident. Supposedly, this defect caused the accident because plaintiff may have accidentally activated the coast feature during his fall, allowing the truck to move freely and hit him.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Under Connecticut law, a plaintiff seeking to recover under a strict-liability theory of products liability "must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed

4

at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Metropolitan Property and Cas. Ins. Co. v. Deere and Co.*, 25 A.3d 571, 579 (Conn. 2011). The parties agree that expert testimony is required in order to sustain plaintiff's burden at trial to show a product design defect. *See, e.g., Wasilewski v. Abel Womack, Inc.*, 2014 WL 819498, at *4 (D. Conn. 2014) (holding expert testimony required to show defect in a case involving a forklift).

I have considered the two alleged defects identified by plaintiff's expert and conclude that there is no genuine fact issue to support a conclusion that either of the alleged defects caused plaintiff's injury. As to the first alleged defect (that the truck's key could be removed from the ignition switch while the truck was still turned on), plaintiff testified in his deposition that the key had been snapped off in the ignition switch of the truck he was driving on the day of the accident, and indeed that keys had been snapped off in the ignition of every truck he could remember using at Bozzuto's. Doc. #39-2 at 106-107. Taking plaintiff at his word, then, it does not matter if his expert is right that the key could be removed from the ignition switch while the truck was turned on, because—as plaintiff insisted—the key had *not* been so removed when he operated the truck.

In an effort to salvage plaintiff's claim, plaintiff's counsel cites the deposition testimony of other employees to suggest that a reasonable jury could conclude that the key in plaintiff's truck had been removed rather than being snapped off. But none of the cited testimony provides a firm enough basis for a reasonable jury to discredit plaintiff's own testimony.

For example, one employee, Gary Titus, testified as follows:

Q    Do you know if anyone snapped off this key on Mr. Garrett's machine?
A    No. There is no key.
Q    What would the key, what would be the function of the key on this machine?

5

| | | |
|---|---|---|
| | A | In a different environment I think if people used it for an eight-hour shift, parked it and went home, they might key it off and keep the key with them. |
| | Q | So what do you mean by a different environment? |
| | A | Well, in an environment that we're not using the equipment 24 hours a day, or each piece of equipment might be used by two or three different people during the course of their day. |
| | Q | So the key turns on and off the machine? |
| | A | If you used that function, yes. We don't use that function. |
| | Q | Do you know if that function was used at the time of Mr. Garrett's– |
| | A | It was not. We don't use the function. |
| | Q | So then how does the equipment get turned on and off if you don't use that function? |
| | A | It's plugged in, the battery is charged, the equipment stays on. If the coast is taken off and it's parked appropriately, it stays on waiting for the next associate to come in and use it. |

Doc. #39-4 at 45-46. Although Titus insisted that "there is no key" and "we don't use that function," Titus never said that the key had been or could be removed while the ignition was turned on (much less did Titus purport to have firsthand knowledge of the condition of plaintiff's truck at the time that plaintiff was injured).

Another employee relied on by plaintiff's counsel could not even remember if there was a key. Doc. #39-3 at 46-48. Yet a third employee relied on by plaintiff's counsel stated that the keys were kept "within the shop maintenance" rather than in the pallet trucks, that the function of the key was to turn the trucks on and off, and that without the key it would have to be turned on by a switch. Doc. #39-5 at 37. This testimony falls well short of stating that any of the keys were or could be removed while the truck was still turned on. Accordingly, in light of plaintiff's sworn testimony that the key was snapped off in his machine, there is no genuine issue of fact to

6

support his expert's claim that the accident was caused by a design defect in the truck that allowed the key to be removed while the truck was still turned on.

As to the second alleged defect (that the coast selector switch was mal-designed such that it could be accidentally activated), the evidence is similarly lacking to support any conclusion that this claimed defect caused plaintiff's injury. As is shown in the truck diagram above, the coast selector switch is located on the body of the truck near the base of the control arm. According to defendant's account of the design of the truck, which plaintiff does not contest, the operator must first pull the control handle down from a vertical position to a diagonal or even horizontal one and *then* flip the activation switch in order to activate the coast feature. Doc. #32 at 9, 61. The control arm is significantly longer than one hand-span, and this means that activating the coast feature is necessarily a two-handed operation: one hand to hold the control arm in the proper position and one to flip the switch.

There is nothing in the record to suggest that plaintiff performed (or could possibly have performed) this two-handed operation while momentarily flailing to grab hold of something to stop his fall after his foot slipped from the truck's platform. Indeed, plaintiff's own deposition testimony again dooms his theory of liability, because plaintiff never claimed that he did or could have accidentally activated the coast selector switch. To the contrary, he repeatedly insisted that he had not activated the coast feature, Doc. #39-2 at 67-68, 72, and he testified that he did not know why Bozzuto's post-accident incident report indicated that his truck had been left in "coast" mode after the accident, *id.* at 95. Nor does any other evidence of record create a genuine fact issue that plaintiff accidentally activated the coast selector switch.[*]

---

[*] Defense counsel also made the point at oral argument that, if the control handle is pulled down and the throttle is turned as seems to have happened during the accident, the truck would move whether or not the coast function had been engaged. Plaintiff did not dispute this point, and this additional reason suffices to defeat causation from the alleged defect involving the coast selector switch.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Doc. #33) is GRANTED. Defendant's motion to exclude plaintiff's expert's testimony (Doc. #31) is DENIED as moot.

The Clerk of Court shall close this case. It is so ordered.

Dated at New Haven this 22d day of June 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge